Good morning, Your Honors. Janet Tong, Federal Defenders of San Diego, on behalf of Mr. Corona-Rivera. Mr. Corona's 90-month sentence for illegal re-entry was unreasonable. And I'd like to focus on the question of whether the conviction for an offer to sell a minimal quantity of marijuana qualifies as a felony drug trafficking offense that triggers the 16-level enhancement under the guideline. And please do tell me if I need to speak up. A little louder, yeah. Okay. Thank you, Your Honor. Can we turn the volume up here? I think we've got something here, but I don't know if it's working or not. I've got it up to the max. I'll stand a little closer to the microphone. Is this better? What? Yeah. So, listen, really, I had my hearing checked because my wife said I didn't seem to be listening or hearing. And I've got a clean bill of health. So it's your problem. To fully confess, it's been my problem more than one occasion. You're doing fine right now. I can hear fine. And sometimes I don't. Just yell at me. Your Honor, the felony drug trafficking offense provision only triggers that 16-level enhancement if it fits the definition of a drug trafficking offense, which actually is there's a definition in the guideline commentary for drug trafficking offense. And it's a felony that's a drug trafficking offense for which a sentence imposed exceeded 13 months. And I think that one way of looking at this is just sort of, you know, just take these pieces of the definition and just sort of apply them without much thought. But you can't do that after Lopez v. Gonzalez. And I think that's because the Supreme Court has taught us in Lopez that in order to understand what a drug trafficking crime is, we have to look at the everyday understanding of the word trafficking. And Lopez started the definition of that by defining that as something involving commercial dealing. And that's something we don't have here. We don't have something that fits the everyday understanding of trafficking. We have a one-time sale of a minimal amount of marijuana. So in order to better understand what that trafficking term means, what the sentencing commission meant it to mean, it's necessary to look at what, in addition to what Black's Law Dictionary, which is what Lopez looked at, and general understandings of commercial dealing are, it's also important to look at how the majority of states that have defined the term, how they have defined the term trafficking. And by my count, there's about 25 states that have either defined the term trafficking in their statutes or in some way defined commercial as a potential drug use. And 20 out of those 25 states set a minimum quantity bar for something to qualify as marijuana trafficking. And for marijuana, it's pretty much roughly, if you look at the consensus of those states, it would be at least a pound or more marijuana would count as trafficking. And that actually, there's actually a few states that don't quite define it that way. There's a few states that define it in terms of they require some sort of multiple sale or multiple ongoing sales. And either way, Mr. Corona's conviction here just doesn't qualify for the everyday. My understanding is that the government argues that Lopez has nothing to do with this and that the statute is quite clear about what is a drug trafficking offense. So what's wrong with that argument? Judge Bergeron, I think the government is incorrect about that. As I understand it, the government bases its argument on the idea that the term itself is unambiguous because it doesn't, unlike Lopez, it doesn't include federal, state, and local law. But that's actually, that's just an inaccurate description of the laws in Lopez. Both the definition here in the guideline commentary, which specifically refers to federal, state, or local law, and the statutory provisions in Lopez, those also refer to state law. So that distinction between here and Lopez is just, it's absent. The other thing that I, the other reason why I think this is very, very much like Lopez is I think one of the other government's arguments is that, you know, here we have a definition and then it's, you know, we have a term, I'm sorry, and then it's defined in the commentary. We can sort of go from one place to the other. But that's exactly what was true in Lopez. In Lopez, the term there was, I think it was drug trafficking crime. But in Lopez, I mean, the ultimate conclusion is, was that one had to look for a comparator. Right? In other words, what was the ultimate conclusion in Lopez as to what? You needed a federal comparator, right? I'm not sure, I'm not sure I would, I think in Lopez the question was a little bit different. And what they, in Lopez the statute itself was defined, the term itself was defined in terms of the elements of a federal statute. Correct. Which expresses that whole thing. Here we have even more ambiguity because it's not. And the sentencing, I think that's another, that's a specific source of ambiguity in this term here is because the Sentencing Commission had at its disposal the ability to import that fairly specific, relatively speaking, definition that Congress used. And they did, in fact, do that in the plus 8. They refer to aggravated felonies for the plus 8 in cancelling. But for the plus 12 and the much more severe plus 16, which is what was applied to my client, they don't. They opted, they did it in one place and they didn't in two other places where the result was more severe. And I think that shows, it strongly suggests, well, it's just, it shows that the definition was meant to be different. But it also strongly suggests that the definition is meant to be more stringent because the consequences are significantly more severe. And, Your Honor, I'd be happy to answer additional. What about the grand jury instructions? Do you have a problem with those? Yes, Your Honor. The grand jury instructions were defective here because they told the grand jurors that they lacked the discretion to not indict so long as they found probable cause. I'm perhaps not phrasing that well, but the grand jury instructions here, if you take into account the voir dire and the instructions themselves, they prevented the grand jurors from exercising their prosecutorial discretion in the way envisioned by the framers and in the way that's envisioned actually specifically by the Supreme Court in Vasquez v. Hillary. Well, they were told that they should indict if they found probable cause and that the grand jury had an obligation to do so. That's correct. That's the language you're complaining about. That was not the instruction. That was in the voir dire, wasn't it? In the voir dire. If you'll give me just a moment, Your Honor. I believe that is correct, but I think the voir dire counts equally, has equal weight as the instructions themselves, because they're the voir dire is given to every person who sits ultimately on the grand jury. No, no, no. The voir dire was a colloquy back and forth between one of the jurors, wasn't it? So to say it's equal weight, I take your point that there were words used in that colloquy, but to say that they're given equal weight. There was a formal instruction on what they should do. In fact, in one of the colloquies, perhaps the one that even used the obligation term, Judge Burns, I think, instructed the grand jury. Well, the obligation came in the second one. That was the R-E-A juror. Right. I think that's the real estate agent. Yeah, the realty person. Oh, I have juror R-E-A. That's where the obligation word came in. And I agree, obligation does cross the line into the must category, but parsing through these two colloquies, it is troublesome that the judge seemed to blur the line, but there was a clear instruction on should if you find probable cause. I just want to make sure we're talking about distinguishing between a jury instruction,  and then there's voir dire, where there's blanket voir dire, of course, where there's the standard questions everybody gets. But as I'm looking at the record, the concerns that you're expressing arose in an interchange between the judge and a particular juror. Judge Fisher, that's true. I think there are very serious concerns that arose in that lawyer exchange, but there are also serious concerns that arose in the instructions themselves. First of all, the instructions themselves incorporated the jury exchange, and he kept referring to it and telling everybody to remember what he said to these other jurors. So it seemed that the two merged in an unusual way. I think that's absolutely right, and I think we have to presume that the jurors who were sitting through the voir dire were paying attention and taking the words and instructions of the court in those voir dire exchanges as the rule of law, and he was presenting essentially the rule that was to apply to the grand jury. I think that's right. And two were excused. Were two prospective grand jurors, they were excused. That's correct. That's exactly right. What he said was, I've gone over this. This is when he's giving the instructions. I've gone over this with a couple of people. You understood from the questions and answers that a couple of people were excused, I think three in this case, because they could not adhere to the principle that I'm about to tell you, and then he went on. So he seems to have essentially incorporated it. He has. He has incorporated those voir dire. My question is, what about Navarro, and why is this structural error? United States versus Navarro, not Navarro-Vargas. The question that was decided in Navarro's is different than the one here. I think it was perhaps the same jury instructions, but that one concerned something really, I think, different in nature. Navarro concerned an instruction that the grand jurors would be, I believe it's that they would be provided with exculpatory evidence by the U.S. attorney. And this Court held that that was, in fact, an inaccurate statement of the law. But they found that the error was harmless because, in essence, because the inculpatory evidence was not admitted, but yet you could look further down at the jury verdict and see that it wouldn't have made a difference because the pettit jury actually found the person guilty. Now, we're in a different situation because what we have is a problem with the fundamental composition of the grand jury. We cannot look further down at what the pettit jury did in order to figure out what the grand jury might have done if it knew it had discretion. I mean, it's, you know, the pettit jury just doesn't have the same kind of discretion. It's like trying to go into the minds of these 12 jurors, and that's what this Court and this Supreme Court's structural error analysis says, you know, that's when we have to apply structural errors, when we have no way of applying this pharmaceutical standard because we can't run into this counterfactual. I think it's actually a much more fundamental problem that's presented here than in Navarro, because in Navarro, I mean, the truth was, you know, whether that exculpatory evidence was presented or not. But the statement in Navarro is not limited at all in the way that you're suggesting. It basically says, Pettit jury's verdict of guilty beyond a reasonable doubt establishes a fortiori that there was probable cause to charge, so grand jury error is rendered harmless under conviction. Period. Not conditioned on anything. Your Honor, I agree that the language there is vague. It doesn't say, you know, like you say, really anything out there. The difference between general and vague. I think it's perhaps both general and vague. But I think that the analysis can't be applied in the same way here because of the differences between what was going on in Navarro and what was going on here. But I think because it's so, I think because it's both general and vague, it doesn't, it didn't decide the question here. And I think that's because all the cases that Navarro relied on are cases in which, not cases in which there was a problem with the structure or the way in which the grand jury was composed, but those are cases in which there was some sort of, you know, fairly minor procedural error. I think there also, I think the, and I'm going off of, memory, but I believe those, that line of cases has to do with rule violations. Violations of the rules of criminal procedure that apply to grand juries. In some cases, I think one of them was a, an issue of sequestering a witness while another witness was testifying. Those are very different. Those don't challenge the basis of what the grand jury, who it is and what it gets to do in the same way that telling the grand jury, when you tell them what their duties are, it's a very fundamental instruction as to, you know, what that grand jury is. Is it a body with procedural discretion that gets to look beyond probable cause or is it not? I think that there hasn't been a case that's presented, at least not in the VAR line of cases that's presented that kind of, that kind of question. So the district judge barred here the potential grand jurors? That's right. The district court judge excused certain grand jurors. Excused grand jurors. That's right. I'm asking this because I remember the first time I had the grand jury duty, there was maybe someone for our dearden before I got to them and took over and swore them in and gave them a talk about what their duties were. And so it was the same judge that voir dired and who gave them the speech about what the duties were. That's correct, Your Honor. It was the same judge who gave both the voir dire and the formal instructions. And there was no counsel? Was the U.S. attorney there? Your Honor, I actually don't know the answer to that question. You don't know? And Judge Berzon, I don't know if I adequately answered your question earlier, but I think one of the central inquiries of whether this qualifies as structural error or not is whether it's, quote, impossible to know what different choices would have been made. It strikes me that perhaps the answer is that or an answer could be that Navarro, the assumption of Navarro or the pivot point of Navarro is that the determination of probable cause, the conviction eliminates any possibility that there wasn't probable cause. But your argument is that even if there isn't probable cause, the jury should have still been able to not indict. So the premise of Navarro doesn't apply to this particular kind of challenge. I think that's actually a very good way of putting it. I think that is correct because when probable cause was asked as a question, as in Navarro, then you can sort of look down the line and say, well, by greater force of logic, if proof beyond reasonable doubt is here, then probable cause was there. But here, like you say, Judge Berzon, is if we're not talking about whether there's probable cause or not, there was probable cause. We're talking about what would they have done either way. I mean, so what? There's probable cause. But particularly an instance where we know that even if you looked at it in terms of harm to the jurors who apparently might have exercised such discretion, except they were eliminated. That's right, Your Honor. I mean, we know that there are two jurors who sort of maybe they, you know, maybe they could be described as disagreeing with some of the notions that they would have to indict upon probable cause. I think that's right, Your Honor. Well, were the grand jurors that brought the indictment against your client, were they from that same pool? Yes, it was this particular pool of jurors. They were instructed and wired in this way, and those people trickled down to the ultimate grand jury, and they indicted Mr. Furman. Are there any additional questions you want to answer? No, thank you. All right. Good morning, Your Honors. May it please the Court, Mark Grady for the United States. Your Honors, the district court properly applied the 16-level enhancement in this case based on the plain, unambiguous language of the controlling guideline. There's two separate terms at issue here, felony and drug trafficking offense. It's not one amalgamated term, felony drug trafficking offense, as the defense would happily believe. Rather, it's an offense that is a felony, and that falls under the meaning of drug trafficking offense. Each of them is given a separate definition in the commentary to Guideline 201.2, and in this case, the statute of conviction, California Health and Safety Code 11-360, even though it is categorically overbroad, under the modified categorical approach, the conduct that the defendant admitted to committing falls squarely within those definitions. First of all, this statute is not a robbery. The only possible sentences are two, three, and four years in prison. So it's definitely a felony. And then as far as selling, I mean, that is the prototypical drug trafficking activity. And the definition in the guideline talks about distribution of a controlled substance. It doesn't set any minimum quantity threshold or number of transactions as the defense is basically trying to graft onto that statute. And obviously, it goes without saying, enforcing the plain language of it being a guideline or a statute is the number one rule of statutory construction. And so if there is no ambiguity, that should end the ‑‑ basically end the inquiry there. But as we pointed out in our brief, I want to give defense counsel credit. It's a creative argument that she's trying to run, but it has no support in the law. But she seems to be basing it largely on Lopez, and what's wrong with that? Lopez was not construing this guideline, first and foremost. That was about the aggravated felony definition, and that was about a case where pure possession, simple possession, can't equal an aggravated felony. That's not the conduct at issue here, and that's also not the statute at issue here. And, in fact, there's ‑‑ this court has precedent, Almazon v. Serra. We cite in our briefs 537‑F30 at page 1100. That's a 2008 case. That postdates Lopez, doesn't indicate any problems that Lopez could throw into this equation. And, in fact, the conduct at issue there was, I think as we point out in our briefs, it's exactly the same thing that was admitted here, that this defendant sold you marijuana. Now, aside from the fact that this court would have to ignore the plain language, as we point out, defense argument falters on several other bases. First of all, she wants to use as her metric the majority of states' use. As we point out, under the categorical approach, this court basically does three steps or three approaches that are taken. One, if Congress or the commission already provides a definition, you're supposed to use that. And that's what I've argued already. But beyond that, when you're looking for a generic definition, this court goes one of two ways. If it was a traditional crime in common law, that's when you go by majority states' usage. If it was not a traditional crime in common law, the court defines it by the ordinary, contemporary, and common meaning of statutory words. In other words, it's a broader rule. Here, without a question, drug trafficking is not a crime in common law. In fact, as we point out in our brief, marijuana, it wasn't even until the early 1900s that the first laws on the books were written. They came out of the states, and then the feds fall in suit. So if it's not a crime in common law, you don't look to the majority state usage. What year was that again? What year was what, Your Honor? Well, you just talked about marijuana. Yeah, I believe California was one of the first states, and it was in the early 1900s, to pass a law criminalizing marijuana trafficking. It was other states that followed. So my point being, this wasn't something that was around in the 1700s or 1800s. This is all very modern. Do you want to talk about the grand jury issue? You know, we will. And I've got to, frankly, Your Honor, I'm a little embarrassed. I came up here, I thought that all of this was predominantly about the sentencing appeal. I mean, Navarro would be what we stand on, that if there were any errors in the grand jury instructions. But what about my point? I mean, the whole premise of Navarro is that you don't go behind the jury verdict because the jury verdict necessarily encompasses probable cause. And here the whole argument is that probable cause isn't good enough with regard to the grand juror's understanding of their realm of authority. So the rationale just doesn't apply. And therefore, it seems to me that we have to take Navarro as, it can be limited It could apply to almost everything, but I don't see how it could apply to this. Well, Your Honor, I mean, structural error is supposed to be exceedingly narrow. Okay. I mean, these challenges to grand jury instructions have come and gone in the last few years. I understand that. I understand that they're a pain for you and you'd rather not have them. But why isn't this? I mean, the problem is that Navarro Vargas is, you know, a limited decision, which did not say that, in fact, jurors don't have this authority. They just said the instructions as they were given were adequate. And here you have a judge who was going well beyond those instructions, was he not? Well, again, Your Honor, I don't – sadly, I don't know that I can really get too far in the weeds on that, and I apologize for that. I mean – Well, we gave you the language. The issue was raised in the case. Well, I know. You know, and normally, I mean, it comes at the very end of the brief. Usually it's challenged to conviction. It's almost – You didn't brief it either. I mean, all you're saying – I mean, maybe we should just default you. I mean, you didn't give us a brief and now you're not giving us an argument. Well, you know, Navarro is all I can say, Your Honor. I mean, how is this so structural? I mean, every one of those cases took issues with some of the language that the judge used. All right. But that doesn't mean they win. But if we thought they didn't, if we did think that – I mean, here you have a situation where he took two jurors off the jury because they said they wanted to issue some authority beyond probable cause. And then he told the jurors at the time of the instruction, you see, I took these jurors off the jury because they wouldn't do this thing that I'm telling you you have to do. So the two were directly connected. So there was an action and there was a connection. There was a reiteration of the action directly to the actual jurors before they went into their tasks. I have no idea what the records in other cases were. I haven't seen them. Maybe you have. But if so, you should have briefed it. You didn't. But you know, Your Honor, probable cause is the fundamental metric for the grand jury. I mean, to – Yeah, but the grand jurors, they have their own discretion and they're not required to return an indictment just because there's probable cause. You know, we – look, we had this example with a judge in Nevada. The government went to a grand jury in Las Vegas and they returned an old bill. Then they went to a grand jury in Reno and returned an old bill. Then they went to a grand jury in Spokane and an indictment was returned. And so, you know, the grand jury, its function is to stand as a shield between the government and the defendant. I understand that, Your Honor. That's what it's all for. But I also think if there's noting in this case, I mean, it shouldn't be enough to override – Well, how are they going to learn? Well, I'm saying it shouldn't be enough to override, you know, the verdict of the jury beyond reasonable doubt, especially in this case. No, that's got nothing to do with it. It's – I mean, you're a prosecutor. You argue you've got to obey the law, you've got to follow the law, you've got to follow the rules. Now, there's a rule here. And there's a proper way to instruct a grand jury. And that's been on the – you know, we've known about – I knew about it. When I had grand jury duty in 19 – first time I did it was in 1968. And I instructed them properly. It was all in there. And, you know, we've had embanks on this, but, you know, it doesn't take much to do things right. We have to set an example. Anyway, you kind of left us with – I feel a little bad, Your Honor. You know, where 95 percent of this case was about sentencing and all this drama and passion about a 90-month sentence, and then, you know, suddenly we come up here. I mean, I understand. It's something I've been through. It was an argument that was raised. It was raised in a lot more length than you answered it. Absolutely. You didn't answer it. Now you're not answering it. Well, I addressed it, Your Honor. And if I can't, maybe I'm not the one who can make the best distinction of Navarro. But you know what? There's an entire 10 years of circuit case law that says these grand jury instructional challenges, they're not structural error. Where's that? I haven't seen one. Which one is that? Well, the Navarro – Yeah, but this one, this particular problem, is there an argument? Is there a case? Maybe not with the exact same facts, because every time I follow this – But it's of a different variety. Don't you see that it's of a fundamentally different variety? It's not of a variety that says there was something that interfered with the determination of probable cause, which is what all the other ones are. It was one that said there was something that interfered with the very role of the grand jury separate from probable cause. I thought some of the prior ones had spoken about here the judge maybe infringed on the probable cause definition a little too much, but it still wasn't found to be enough. Right. That's true, because there was ultimately a conviction that saw there was ultimately probable cause. But that's not the problem here. That's all I've got. I'll ask you a minute. Why else do we have a grand jury? It's in the Constitution, isn't it? It's in the Constitution, Judge Ferguson. That's absolutely right. And there's really no dispute that the grand jury does have the discretion to indict, or indict or not indict, regardless of probable cause. The only thing I would say, I think this may have already been answered, but Judge Fisher, I feel like I didn't give you an adequate answer to your question about the voir dire and the actual instructions. But the obligation language was actually used in the actual instructions in a slightly different way. It's in the ER 3738. I'm sorry? It's in the excerpts of record at 37 and 38, and that's actually the part that Judge Ferguson references where Judge Burns incorporated what happens in the voir dire. He said, I've gone over this with a couple of people. You understood from the questions and answers that a couple of people were excused, I think three in this case, because they could not adhere to the principle of non-violence. Then he kind of goes on and he says, if you disagree with the judgment made by Congress, then your option is not to say, well, I'm going to vote against indicting, even though I think that the evidence is sufficient, or I'm going to vote in favor of indicting, even though the evidence may be insufficient. Instead, your obligation is to contact your congressman or advocate for a change in the law. So I do think it's fully incorporated in the formal instructions. What were you reading from? I'm reading actually from the opening brief on page 23, but it quotes from the excerpts. I've missed some of that. 3738. Unless there are any further questions, I would say that. Okay. Thank you. Thank you.
judges: Pregerson, Fisher, Berzon